## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr>
<td>
DO NO HARM,<br>
       Plaintiff,<br><br>
    v.<br><br>
UNITED STATES DEPARTMENT OF HEALTH<br>
AND HUMAN SERVICES <em>et al.</em>,<br>
       Defendants.
</td>
<td>Case No. 1:26-cv-01062-LLA</td>
</tr>
</table>

**PAPA OLA LŌKAHI'S MEMORANDUM IN SUPPORT OF ITS MOTION TO INTERVENE**

Plaintiff Do No Harm ("DNH") challenges the Native Hawaiian Health Scholarship Program ("Scholarship Program"), 42 U.S.C. § 11709, created by and provided for in the Native Hawaiian Health Care Act ("Health Care Act"). *Id.* §§ 11701–11714.[1] The Scholarship Program is a workforce development program that helps train Native Hawaiian health care practitioners and increases health care access for medically underserved areas in Hawaiʻi. Congress passed the Health Care Act and created the Scholarship Program in fulfillment of the United States's trust responsibility and legal obligations to Native Hawaiians. *Id.* §§ 11701(17)–(21), 11702(a). DNH alleges that the Scholarship Program violates the Fifth Amendment's Due Process Clause and seeks a declaratory judgment and permanent injunction against the Scholarship Program. Under the Health Care Act, and pursuant to a cooperative agreement with Defendant United States Health Resources and Services Administration ("HRSA"), Papa Ola Lōkahi jointly administers the Scholarship Program with HRSA. Because DNH's sought after relief would directly impact

---

[1] As amended by the Native Hawaiian Health Care Improvement Act, Pub. L. No. 102-396, § 9168, 106 Stat. 1876, 1948 (1992) (codified at 42 U.S.C. §§ 11701–11714).

Papa Ola Lōkahi's execution of its statutory and organizational kuleana (responsibility), Papa Ola Lōkahi moves to intervene as a defendant to defend the Scholarship Program.

Papa Ola Lōkahi has unique organizational interests in the subject matter and outcome of this litigation and seeks intervention to protect those interests. As one of the congressionally designated administrators of the Scholarship Program, Papa Ola Lōkahi fulfills all the criteria to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, for permissive intervention under Rule 24(b)(1).

## BACKGROUND

The United States has a longstanding political and trust relationship with Native Hawaiians. Congress has acknowledged that "Native Hawaiians comprise a distinct and unique indigenous people with a historical continuity to the original inhabitants of the Hawaiian archipelago whose society was organized as a Nation prior to the arrival of the first nonindigenous people in 1778." 42 U.S.C. § 11701(1). "[F]rom 1826 until 1893, the United States recognized the independence of the Kingdom of Hawaii, extended full and complete diplomatic recognition to the Hawaiian Government, and entered into treaties and conventions with the Hawaiian monarchs to govern commerce and navigation in 1826, 1842, 1849, 1875, and 1887[.]" S.J. Res. 19, 103rd Cong., 107 Stat. 1510, 1510 (1993) (enacted). Native Hawaiians never relinquished their right to self-determination despite the United States's involvement in illegally overthrowing the Kingdom of Hawaiʻi and deposing Queen Liliʻuokalani in 1893, and dismantling the Hawaiian government, actions for which Congress has apologized. *Id.* § 1(3), 107 Stat. at 1513 ("[The Congress] apologizes to Native Hawaiians on behalf of the people of the United States for the overthrow of the Kingdom of Hawaii on January 17, 1893 with the participation of agents and citizens of the United States, and the deprivation of the rights of

2

Native Hawaiians to self-determination[.]").

Hundreds of acts of Congress, including the Health Care Act, expressly acknowledge or recognize the United States's trust responsibility to and political relationship with Native Hawaiians. *See* 42 U.S.C. § 11701(19) ("This historical and unique legal relationship has been consistently recognized and affirmed by the Congress. . . ."); *id.* § 11701(20) ("The United States has also recognized and reaffirmed the trust relationship to the Hawaiian people . . . ."); *see also, e.g.*, Hawaiian Homelands Homeownership Act of 2000, Pub. L. No. 106-569, § 512(13)(B), 114 Stat. 2944, 2966 (2000) (codified at 25 U.S.C. § 4221 note) ("Congress does not extend services to Native Hawaiians because of their race, but because of their unique status as the indigenous people of a once sovereign nation as to whom the United States has established a trust relationship[.]"); Native Hawaiian Education Act, 20 U.S.C. § 7512(13) ("The political relationship between the United States and the Native Hawaiian people has been recognized and reaffirmed by the United States, as evidenced by the inclusion of Native Hawaiians in[ listing statutes and programs]."). In the Health Care Act and its amendments, Congress

> declare[d] that it is the policy of the United States in fulfillment of its special responsibilities and legal obligations to the indigenous people of Hawaii resulting from the unique and historical relationship between the United States and the Government of the indigenous people of Hawaii—
> (1) to raise the health status of Native Hawaiians to the highest possible health level; and
> (2) to provide existing Native Hawaiian health care programs with all resources necessary to effectuate this policy.

42 U.S.C. § 11702(a). Papa Ola Lōkahi was formally incorporated as part of Congress's efforts to deliver on the United States's trust and legal obligations to Native Hawaiians. *Id.* § 11701(18) ("In furtherance of the trust responsibility for the betterment of the conditions of Native Hawaiians, the United States has established a program for the provision of comprehensive health promotion and disease prevention services to maintain and improve the health status of the

Hawaiian people.").

Papa Ola Lōkahi is a non-profit organization based in Honolulu, Hawaiʻi, whose mission is "[t]o improve the health status and wellbeing of Native Hawaiians and others by advocating for, initiating and maintaining culturally appropriate strategic actions aimed at improving the physical, mental and spiritual health of Native Hawaiians and their ʻohana (families) and empowering them to determine their own destinies." *Ke Ala Mālamalama, Mission*, Papa Ola Lōkahi, https://www.papaolalokahi.org/about-us (last visited May 14, 2026). Papa Ola Lōkahi was formally incorporated in 1989 after Congress passed the Health Care Act and established numerous duties for Papa Ola Lōkahi to address the severe "unmet health needs of the Native Hawaiian people . . . ." 42 U.S.C. § 11701(22); *see id.* § 11711(7) (outlining structure of Papa Ola Lōkahi). Papa Ola Lōkahi has been committed to and delivered on its critical mission for almost forty years.

Pursuant to the Health Care Act, Papa Ola Lōkahi is required to: (1) "[c]oordinate, implement and update a Native Hawaiian comprehensive master plan" that helps promote and maintain the health of Native Hawaiians; (2) train Native Hawaiian health care practitioners, community outreach workers, counselors, and cultural educators; (3) identify and research diseases that affect Native Hawaiians; (4) "[d]evelop an action plan" to coordinate the roles of each member organization of Papa Ola Lōkahi; (5) serve as a clearinghouse for data on the health status of Native Hawaiians; (6) "[c]oordinate and assist health care programs and services provided to Native Hawaiians[]"; and (7) "[a]dminister special projects." *Our Kuleana*, Papa Ola Lōkahi, https://www.papaolalokahi.org/kuleana (last visited May 13, 2026); *see* 42 U.S.C. § 11704.

As part of its work implementing its comprehensive master plan for Native Hawaiian

4

health and mandate to train Native Hawaiian health care practitioners, Papa Ola Lōkahi was statutorily designated as a joint administrator of the Scholarship Program in 2002. Pub. L. No. 107-116, § 514, 115 Stat. 2177, 2220 (2002). Papa Ola Lōkahi now jointly administers the Scholarship Program with HRSA. 42 U.S.C. § 11709. The Scholarship Program is a merit-based scholarship for Native Hawaiian students pursuing certain primary health care professions who commit to providing a minimum of two years of service in medically underserved areas in Hawaiʻi. *Id.* Papa Ola Lōkahi implements rigorous recruitment and selection criteria to identify candidates who are qualified and committed to improving the health of Native Hawaiians.

Since 1991, the Scholarship Program has helped more than 300 recipients pursue health profession education and employment in Hawaiʻi.[2] In Fiscal Year 2025 alone, Congress appropriated $2.2 million for the Scholarship Program, which funded ten Scholarship Program recipients. Consistent with the Health Care Act, the scholarships correspond to the need for each type of health care professional identified in the comprehensive master plan. *Id.* § 11709(b)(1)(A). Pursuant to Papa Ola Lōkahi's mission, Scholarship Program recipients help provide medical care integrated with traditional Native Hawaiian values, beliefs, and practices. More than half of Scholarship Program recipients have continued working in medically underserved areas beyond the tenure of their service obligations. *Native Hawaiian Health Scholarship Program – How It Works*, Papa Ola Lōkahi (July 28, 2025), https://www.papaolalokahi.org/blog/native-hawaiian-health-scholarship-program-how-it-works. The Scholarship Program "has strategically increased the number of providers in primary care and behavioral health disciplines to meet Hawaiʻi's health care professional shortage."

---

[2] *See* Papa Ola Lōkahi, *Impact Report Mauli Ola Mālamalama 2024–2025*, at 14 (2025), https://www.papaolalokahi.org/wp-content/uploads/MOM_report_2025_Single-Page_251117_FINAL.pdf [hereinafter MOM Report].

MOM Rept., *supra* at 14.

Under the Health Care Act, Papa Ola Lōkahi has primary responsibility for implementing the Scholarship Program eligibility criteria. *See* 42 U.S.C. § 11709(b)(1). Papa Ola Lōkahi's joint administration of the Scholarship Program includes applicant vetting, Scholarship Program recipient placement, mentoring, and other professional development support. DNH's suit attacks the heart of Papa Ola Lōkahi's work and the health status and well-being of the community Papa Ola Lōkahi was established to serve.

## ARGUMENT

Papa Ola Lōkahi satisfies all the criteria for intervention as a matter of right under Rule 24(a)(2). Papa Ola Lōkahi has Article III standing to defend the Scholarship Program, its motion to intervene is timely, and it has an unmistakable and unique interest in this case because DNH has challenged the very program Congress has tasked Papa Ola Lōkahi with jointly administering. Papa Ola Lōkahi's statutory responsibilities and organizational mission will be impaired if the Scholarship Program is enjoined, and no party to the action adequately represents Papa Ola Lōkahi's interests. Alternatively, Papa Ola Lōkahi meets the criteria for permissive intervention under Rule 24(b)(1)(B). This Court has subject matter jurisdiction, Papa Ola Lōkahi's motion is timely, it will raise defenses concerning the legal and factual allegations raised by DNH regarding the Scholarship Program and the people it serves, and it will contribute significantly to the development of the underlying legal and factual issues in this case.

## I.    Papa Ola Lōkahi is Entitled to Intervene as a Matter of Right

### A.    Papa Ola Lōkahi has Article III Standing

The United States Court of Appeals for the District of Columbia Circuit requires would-be defendant-intervenors to demonstrate Article III standing by showing injury in fact, causation,

6

and redressability. *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733–34 (D.C. Cir. 2003). A party seeking to intervene to uphold or defend government action establishes standing by demonstrating "(a) that it would suffer a concrete injury-in-fact if the action were to be set aside, (b) that the injury would be fairly traceable to the setting aside of the agency action, and (c) that the alleged injury would be prevented if the agency action were to be upheld." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 13 (D.D.C. 2010) (citations omitted).

It is apparent that Papa Ola Lōkahi would suffer a concrete injury if the Scholarship Program were enjoined or substantially modified. Papa Ola Lōkahi jointly administers the Program with HRSA. In its complaint, DNH states that "[Defendant United States Department of Health and Human Services ('HHS')], via HRSA, administers the Program through 'a cooperative agreement with' a nonprofit organization." Compl. ¶ 17. That "nonprofit organization" is Papa Ola Lōkahi. DNH seeks to enjoin Defendants HHS, HRSA, Secretary Robert F. Kennedy, Jr., and Thomas J. Engels (together, "Defendants") from "enforcing or applying" the Scholarship Program's operation for the benefit of Native Hawaiian scholarship recipients. *Id.* at 10, ¶ b. That injunction, if granted, would require Papa Ola Lōkahi to alter the execution of its statutory responsibilities in a manner contrary to its mission, mandate, and kuleana (responsibility). DNH's requested relief would require Papa Ola Lōkahi to, at a minimum, change how it recruits, recommends, and supports Scholarship Program recipients. The requested relief would directly impact the overall administration of the Scholarship Program and impede ongoing collaborations between Papa Ola Lōkahi and HRSA for the upcoming fiscal year. DNR's requested relief also threatens approximately $2.2 million annually for work central to Papa Ola Lōkahi's mission and services critical to its comprehensive master plan for Native

Hawaiian health.

The Supreme Court has recently held that entities like Papa Ola Lōkahi, which have a role in administering or implementing federal programs, can establish injury in fact when those programs are changed to their detriment. *See Biden v. Nebraska*, 600 U.S. 477, 494 (2023) ("The Secretary's plan harms MOHELA in the performance of its public function [of servicing federal student loans.]"). The Supreme Court has also recently explained that where government action will "require or forbid some action" by a party—as DNH seeks here—injury in fact and causation are "almost invariably" satisfied. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (explaining the ease of satisfying standing where a party is directly regulated or impacted, as compared to when an unregulated party challenges governmental regulation of a third party); *see also Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 156−57 (D.D.C. 2001) (finding organization whose operations were governed by challenged regulation had standing to intervene as defendant). As described above, Papa Ola Lōkahi, as one of the statutorily designated administrators of the Scholarship Program, would clearly be injured if Defendants altered the Scholarship Program in the manner DNH seeks, and it would suffer similar injuries if the Scholarship Program was enjoined or modified by the Court. The relief DNH seeks would require Papa Ola Lōkahi to alter its execution of its statutory duties and would "render nugatory all the efforts [Papa Ola Lōkahi] ha[s] made to date in assisting in the [Scholarship Program's] creation and will lead to a period of uncertainty." *Am. Horse Prot. Ass'n*, 200 F.R.D. at 157.

These injuries will not occur if the Scholarship Program is upheld. Thus, redressability is clearly met as well. *Fund for Animals*, 322 F.3d at 733. Papa Ola Lōkahi has Article III standing to intervene to defend the Scholarship Program.

8

### B.    Papa Ola Lōkahi Meets the Requirements for Intervention as of Right

The right to intervene "implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *100Reporters LLC v. U.S. Dep't of Just.*, 307 F.R.D. 269, 274 (D.D.C. 2014) (quoting *Hodgson v. United Mine Workers*, 473 F.2d 118, 130 (D.C. Cir. 1972)) (quotation marks omitted).  Intervention as of right is governed by Rule 24(a), which provides, in relevant part:

> On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  Rule 24(a)(2) is met when a party seeking to intervene demonstrates the following four requirements: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Karsner v. Lothiani*, 532 F.3d 876, 885 (D.C. Cir. 2008) (quotation marks, citation omitted). Papa Ola Lōkahi satisfies these requirements.

### 1.    Papa Ola Lōkahi's Motion to Intervene is Timely

The timeliness of a motion to intervene is "to be judged in consideration of all the circumstances," *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (quotation marks, citation omitted), "especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Karsner*, 532 F.3d at 886 (quotation marks, citation omitted). Timeliness is easily met when a motion to

intervene is filed in the early stages of a case. *Cayuga Nation v. Zinke*, 324 F.R.D. 277, 282 (D.D.C. 2018) (motion to intervene timely when filed on the same day defendants were required to respond to the complaint).

DNH's Complaint was filed on March 30, 2026. Defendants have not yet entered an appearance and no responsive pleading or motion has been filed. At this stage in the case, Papa Ola Lōkahi's intervention will not delay the action or otherwise prejudice any party. *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) ("[T]he requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." (citations omitted)). Papa Ola Lōkahi's motion is therefore timely.

### 2.    Papa Ola Lōkahi has Legally Protected Interests in this Litigation

A court's conclusion that the intervenor has Article III "standing is alone sufficient to establish that the [intervenor] has 'an interest relating to the property or transaction which is the subject of the action[.]'" *Fund for Animals*, 322 F.3d at 735 (citation omitted); *see also Am. Horse Prot. Ass'n*, 200 F.R.D. at 157 ("[I]t is impossible conjure a case in which an intervenor would have constitutional standing to intervene but not have a sufficient 'interest in the litigation' to justify intervention under [Rule] 24(a)(2)."). As discussed in Section I.A, Papa Ola Lōkahi has Article III standing to intervene, thus it also has a legally protected interest in this litigation.

Congress has designated Papa Ola Lōkahi as a joint administrator of the Scholarship Program. 42 U.S.C. § 11709. The Scholarship Program is an integral piece of Congress's plan for improving the health status of Native Hawaiians, a plan in which Papa Ola Lōkahi plays a central role. Papa Ola Lōkahi's joint administration of the Scholarship Program includes applicant

vetting and Scholarship Program recipient placement, mentoring, and professional development support, all of which is inextricably connected to its workforce development program implementing the comprehensive master health care plan as required by the Health Care Act. *See id.* § 11704(a)(1) (Papa Ola Lōkahi is responsible for "coordination, implementation, and updating, as appropriate, of the comprehensive health care master plan"). Papa Ola Lōkahi has clear, statutorily acknowledged and federally funded legally protected interests directly at issue in this case. *Id.* § 11709. For these reasons, and because Papa Ola Lōkahi has Article III standing, it has a legally protected interest sufficient to meet the requirements of Rule 24(a).

### 3.    Papa Ola Lōkahi's Interests May, as a Practical Matter, Be Impaired by this Litigation

To determine whether an intervenor is so situated that the disposition of the action may impair or impede its ability to protect its interest, courts consider the "practical consequences" of denying intervention. *Fund for Animals*, 322 F.3d at 735 (quotation marks omitted); *100Reporters*, 307 F.R.D. at 278. Such practical consequences may include economic consequences. *Fund for Animals*, 322 F.3d at 735. An intervenor's interest may be impaired when they "are subject to the resultant agency program that directly impacts the obligations" of the intervenor. *Am. Horse Prot. Ass'n*, 200 F.R.D. at 158; *see also Wildearth Guardians*, 272 F.R.D. at 19; *Cal. Valley Miwok Tribe v. Salazar*, 281 F.R.D. 43, 47 (D.D.C. 2012).

As described in Section I.A, a declaratory judgment and injunction against the Scholarship Program would directly impact how Papa Ola Lōkahi fulfills its statutory role, including how it recruits, vets, and recommends Scholarship Program recipients. DNH's requested relief could also impede the flow of approximately $2.2 million to Scholarship Program recipients and Papa Ola Lōkahi. Even if these practical administrative and economic impacts were not foreseeable impairments resulting from the relief DNH seeks, the fact that Papa

Ola Lōkahi—as a joint administrator of the Scholarship Program—would be bound by the judgement of this case clearly establishes impairment, and indeed would have satisfied the more stringent requirements of Rule 24(a) before the Congress's 1966 amendments to the Rule. *See Nuesse v. Camp*, 385 F.2d 694, 701 (D.C. Cir. 1967) (explaining that the 1966 "changes wrought in Rule 24(a) have repudiated th[e] narrow approach[,]" which "required that the applicant might be 'bound' by the judgment in the pending action[,]" thus "liberaliz[ing] the right to intervene in federal actions."). As a practical matter, a declaratory judgment and injunction against the Scholarship Program will directly impact Papa Ola Lōkahi's ability to fulfill its statutory and organizational missions, the community it serves, and its day-to-day work.

### 4.     The Existing Parties Do Not and Cannot Adequately Represent Papa Ola Lōkahi's Interests

The burden to demonstrate inadequate representation is "minimal," and is satisfied if the proposed intervenor "shows that representation of his interest '*may be*' inadequate." *Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, No. 17-cv-0992 (KBJ), 2017 WL 11582637, at *1 (D.D.C. Aug. 2, 2017) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)) (quotation marks omitted, emphasis added). Courts in this Circuit "have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736; *see id*. at 736 n.9 (collecting cases). This is because the government's overarching "obligation is to represent the interests of the American people," while the intervenor's obligation is to represent its own mission and interests. *Id.* at 736. "[M]erely because parties share a general interest in the legality of a program or regulation does not mean that their particular interests coincide so that representation by the agency alone is justified." *Am. Horse Prot. Ass'n*, 200 F.R.D. at 159 (citation omitted).

Papa Ola Lōkahi was created to improve the health status of Native Hawaiians. Whereas

12

Defendants have an interest in executing the mandates of the Health Care Act—including through HRSA's joint administration and cooperative agreement with Papa Ola Lōkahi—Papa Ola Lōkahi is principally interested in increasing Native Hawaiians' access to competent care, developing a robust Native Hawaiian workforce serving Native Hawaiians, providing programs and services to Native Hawaiians, and advancing the research and data critical to these interests. Congress specifically delegated these tasks to Papa Ola Lōkahi in the Health Care Act, not Defendants. *See* 42 U.S.C. § 11704. In contrast, Defendants are "burdened with the responsibility of balancing multiple competing public interests[,]" *Wildearth Guardians*, 272 F.R.D. at 17, obligations which "may necessarily render its representation of [Papa Ola Lōkahi] inadequate." *Am. Horse Prot. Ass'n*, 200 F.R.D. at 159. Papa Ola Lōkahi and HRSA also have separate roles and responsibilities under the Health Care Act and will be impacted differently by the proposed declaratory judgment and injunction in this case. Because Papa Ola Lōkahi's interests are different and more specific than Defendants', Defendants cannot adequately represent them.

## II.    In the Alternative, Papa Ola Lōkahi Meets the Requirements for Permissive Intervention

Papa Ola Lōkahi also qualifies for permissive intervention under Rule 24(b). Rule 24(b) provides: "On timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). A party seeking permissive intervention must meet three elements: "'(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action.'" *United Mexican States v. Lion Mex. Consol. L.P.*, 172 F.4th 1, 11 (D.C. Cir. 2026) (quoting *Equal Emp. Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)); *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 10 (D.D.C. 2007). Papa Ola Lōkahi meets all three

elements.

First, this Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) because as intervenor-defendant, Papa Ola Lōkahi is directly implicated by DNH's claims which "aris[e] under" the Constitution of the United States. Compl. ¶ 6; *see id.* at 10. Second, as described in Section I.B.1, Papa Ola Lōkahi's motion is timely and in advance of any responsive pleading, discovery, scheduling conference, or order. Papa Ola Lōkahi's intervention will not delay or prejudice the adjudication of the parties' rights.

Finally, in intervening in this case, Papa Ola Lōkahi raises defenses that have questions of law and fact in common with the main action. This element is satisfied when the intervening party "seeks to 'defend' the 'actions' of a defendant in a way that 'would raise the same factual and legal issues that' the defendant would 'likely raise.'" *Hannam Chain USA, Inc. v. Nat'l Labor Relations Bd.*, No. 25-2896 (TJK), 2025 WL 4083334, at *2 (D.D.C. Sept. 27, 2023) (citation, brackets omitted). Here, Papa Ola Lōkahi "seeks to . . . 'defend the constitutionality' of the [Scholarship Program.]" *Id*. As set forth in Sections I.A and I.B.2–4, Papa Ola Lōkahi "has a clear interest in" defending the Scholarship Program, *id*., given its statutory and organizational responsibilities.

In defending the Scholarship Program, Papa Ola Lōkahi will address the legal and factual issues raised by DNH regarding the Scholarship Program and the people and recipients it serves, as well as address any potential remedy that may result from the Court's judgement. These legal and factual issues are identified in Papa Ola Lōkahi's attached Proposed Answer in Intervention to Complaint, they satisfy the common questions requirement of Rule 24(b), and do not enlarge the scope of the current litigation. *See Me-Wuk Indian Cmty. of Wilton Rancheria v. Kempthorne*, 246 F.R.D. 315, 321 (D.D.C 2007) (permitting intervention as "the central interest at issue

remains constant[]").

## CONCLUSION

For the foregoing reasons, the Court should grant Papa Ola Lōkahi intervention as a matter

of right or, in the alternative, permissive intervention as a defendant in this case.

RESPECTFULLY SUBMITTED this 15th day of May, 2026.


*/s/ Morgan E. Saunders*
Morgan E. Saunders (DC Bar No. 1686106)
NATIVE AMERICAN RIGHTS FUND
950 F Street Northwest, Suite 1050
Washington, DC 20004
Tel. (202) 785-4166
saunders@narf.org


*/s/ Wesley James Furlong*
Wesley James Furlong (DDC Bar No. AK0003)
NATIVE AMERICAN RIGHTS FUND
420 L Street, Suite 310
Anchorage, AK 99501
Tel. (907) 276-0680
wfurlong@narf.org


Matthew L. Campbell (DDC Bar No. CO0060)
Malia Gesuale** (CO Bar No. 59452)
NATIVE AMERICAN RIGHTS FUND
240 Arapahoe Avenue
Boulder, CO 80302
Tel. (303) 447-8760
campbell@narf.org
gesuale@narf.org

Elliott A. Milhollin (DC Bar No. 474322)
Gregory A. Smith* (DC Bar No. 413071)
Olga Symeonoglou* (DC Bar No. 888273449)
Claire M. Newfeld* (DC Bar No. 90019010)
HOBBS STRAUS DEAN & WALKER, LLP
1899 L Street Northwest, Suite 1200
Washington, DC 20036
Tel. (202) 822-8282
emilhollin@hobbsstraus.com
gsmith@hobbsstraus.com
osymeonoglou@hobbsstraus.com
cnewfeld@hobbsstraus.com

Makalika D. Naholowaa* (HI Bar No. 011695)
Sharla Manley* (HI Bar No. 008868)
NATIVE HAWAIIAN LEGAL CORPORATION
1164 Bishop Street, Suite 1205
Honolulu, HI 96813
Tel. (808) 521-2302
makalika@nhlchi.org
sharla.manley@nhlchi.org

*pro hac vice* application forthcoming
**D.D.C. admission pending


*Counsel for Papa Ola Lōkahi*

15