**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DO NO HARM,<br>*Plaintiff*,<br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>*Defendants*,<br>and<br><br>PAPA OLA LOKAHI<br><br>*Intervenor-Defendant*. | No. 1:26-cv-01062-LLA |

**DO NO HARM'S MEMORANDUM IN OPPOSITION TO TRANSFER**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii
INTRODUCTION ........ 1
BACKGROUND ........ 1
ARGUMENT ........ 2
I. POL waived venue arguments by intervening. ........ 2
II. This action could not have been brought in Hawaii. ........ 5
III. The balance of factors weighs heavily against transfer. ........ 8
A. The private-interest factors disfavor transfer. ........ 8
B. The public-interest factors disfavor transfer. ........ 14
IV. If the Court grants transfer, it should stay its order to permit appellate review. ........ 20
CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**Cases**

*84 Video/Newsstand v. Sartini*,
2009 WL 10656014 (N.D. Ohio June 22) .......... 3

*Adarand Constructors, Inc. v. Pena*,
515 U.S. 200 (1995) .......... 15

**Akiachak Native Cmty v. Dep't of Interior*,
502 F. Supp. 2d 64 (D.D.C. 2007) .......... 6, 8, 9, 10, 19

*Al Maqaleh v. Gates*,
620 F. Supp. 2d 51 (D.D.C. 2009) .......... 21

*Alaska v. Department of the Interior*,
2025 WL 1730193 (D.D.C. June 23) .......... 11, 17

*Am. Fed'n of Gov't Emps. v. United States*,
195 F. Supp. 2d 4 (D.D.C. 2002) .......... 15

*Am. Hist. Ass'n v. Trump*,
835 F. Supp. 3d 1 (D.D.C. 2026) .......... 21

*APCC Servs. v. Sprint Commc'ns*,
297 F. Supp. 2d 90 (D.D.C. 2003). .......... 22, 23

*Aracely, R. v. Nielsen*,
319 F. Supp. 3d 110 (D.D.C. 2018) .......... 10

*Asbury Glen/Summit Ltd. P'ship v. Southeast Mortgage Co.*,
776 F. Supp. 1093 (W.D.N.C. 1991) .......... 3

*Atlantic Marine Construction Co. v. United States District Court*,
571 U.S. 49 (2013) .......... 4

*Beam Laser Sys. v. Cox. Commc'ns*,
117 F. Supp. 2d 515 (E.D. Va. 2000) .......... 4

*Bourdon v. U.S. Dep't of Homeland Sec.*,
235 F. Supp. 3d 298 (D.D.C. 2017) .......... 12

*Buesgens v. Brown*,
567 F. Supp. 2d 26 (D.D.C. 2008) .......... 2

*Central Trust Corporation v. McGeorge,*
151 U.S. 129 (1894) .......... 3, 4

*Cherdak v. AAA*,
443 F. Supp. 3d 134 (D.D.C. 2020) .......... 7

*Chrysler Credit Corp. v. Country Chrysler*,
928 F.2d 1509 (10th Cir. 1991) .......... 20, 22

*City of West Palm Beach v. U.S. Army Corps of Engineers*,
317 F. Supp. 3d 150 (D.D.C. 2018) .......... 8

*City Stores Co. v. Lerner Shops*,
410 F.2d 1010 (D.C. Cir. 1969). ....23

*CityFed Fin. Corp. v. Office of Thrift Supervision*,
58 F.3d 738 (D.C. Cir. 1995)....21

*Clark v. Barnard*,
108 U.S. 436 (1883) ....3, 5

*Commercial Lighting Prods. v. U.S. Dist. Court*,
537 F.2d 1078 (9th Cir. 1976) ....24

*Commonwealth Edison Co. v. Train*,
71 F.R.D. 391 (N.D. Ill. 1976) .... 2, 3, 4

*Conserve Sw. Utah v. U.S. Dep't of the Interior*,
2022 WL 20700168 (D.D.C. Sept. 7)....16

*Consumers Union of U.S. v. Consumer Product Safety Comm'n*,
590 F.2d 1209 (D.C. Cir. 1978) ....2, 5, 21, 23

*Ctr. for Biological Diversity v. Ross*,
310 F. Supp. 3d 119 (D.D.C. 2018) .... 14, 16

*Cty. Sec. Agency v. Ohio Dep't of Com.*,
296 F.3d 477 (6th Cir. 2002) ....2

*Cuomo v. U.S. Nuclear Regul. Comm'n*,
772 F.2d 972 (D.C. Cir. 1985)....22

*D.C. v. Trump*,
810 F. Supp. 3d 19 (D.D.C. 2025) ....22

*Database Am., Inc. v. Bellsouth Advert. & Pub. Corp.*,
825 F. Supp. 1216 (D.N.J. 1993) ....24

*Defs. of Wildlife v. Bureau of Ocean Energy Mgmt., Regul., & Enf't*,
791 F. Supp. 2d 1158 (S.D. Ala. 2011) ....3

*Detroit Int'l Bridge Co. v. Gov't of Canada*,
787 F. Supp. 2d 47 (D.D.C. 2011) ....18

*Dexia Credit Local v. Rogan*,
2008 WL 4543013 (N.D. Ill. Oct. 9, 2008) ....3

*DSCC v. Trump*,
828 F. Supp. 3d 1 (D.D.C. 2026).... 18, 19

*Eleutian Tech. v. Glob. Educ. Techs.*,
2008 WL 11337640 (D. Wyo. Dec. 30).... 2, 3, 4

*FHFA v. First Tenn. Bank Nat'l Ass'n*,
856 F. Supp. 2d 186 (D.D.C. 2012) ....14, 16, 19

**Garcia v. Acosta*,
393 F. Supp. 3d 93 (D.D.C. 2019) .... 6, 7, 9, 10, 19

*Gen. Elec. Co. v. Johnson*,
362 F. Supp. 2d 327 (D.D.C. 2005) .......... 13

*Gradel v. Piranha Capital, L.P.*,
495 F.3d 729 (7th Cir. 2007) .......... 3

*Greater Yellowstone Coal. v. Bosworth*,
180 F. Supp. 2d 124 (D.D.C. 2001) .......... 8, 9, 14, 16

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947) .......... 19

*Gulf Restoration Network v. Jewell*,
87 F. Supp. 3d 303 (D.D.C. 2015) .......... 15, 16, 19

*Heckler v. Mathews*,
465 U.S. 728 (1984) .......... 16

*Hill v. Henderson*,
195 F.3d 671 (D.C. Cir. 1999) .......... 20, 24

*Hoffman v. Blaski*,
363 U.S. 335 (1960) .......... 2

*Holland v. ACL Transportation Services, LLC*,
815 F. Supp. 2d 46 (D.D.C. 2011) .......... 13

*In re Bayshore Ford Truck Sales*,
471 F.3d 1233 (11th Cir. 2006) .......... 3

*In re Briscoe*,
976 F.2d 1425 (D.C. Cir. 1992) .......... 20, 22, 24

*In re Chamber of Com.*,
105 F.4th 297 (5th Cir. 2024) .......... 24

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) .......... 24

*In re Scott*,
709 F.2d 717 (D.C. Cir. 1983) .......... 24

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008) .......... 24

*In re United States*,
273 F.3d 380 (3d Cir. 2001) .......... 24

*In re Volkswagen of Am.*,
545 F.3d 304 (5th Cir. 2008) (en banc) .......... 24

*Intrepid Potash-New Mexico v. U.S. Dept. of Interior*,
669 F. Supp. 2d 88 (D.D.C. 2009) .......... 4, 23

*Jalloh v. Underwood*,
300 F. Supp. 3d 151 (D.D.C. 2018) .......... 8, 10

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*,
233 F. Supp. 2d 16 (D.D.C. 2002) ....................22

*M & N Plastics, Inc. v. Sebelius*,
997 F. Supp. 2d 19 (D.D.C. 2013) ....................13

*Mazzarino v. Prudential Insurance Co. of America*,
955 F. Supp. 2d 24 (D.D.C. 2013) ....................11, 12, 19

*Missouri v. U.S. Food & Drug Admin.*,
2025 WL 2825980 (N.D. Tex. Sept. 30)....................3

*Molock v. Whole Foods Mkt. Grp, Inc.*,
317 F. Supp. 3d 1 (D.D.C. 2018)....................23

*Nat'l Ass'n of Home Builders v. EPA*,
675 F. Supp. 2d 173 (D.D.C. 2009) ....................7, 9, 10

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville*,
508 U.S. 656 (1993) ....................7

*Ngonga v. Sessions*,
318 F.Supp.3d 270 (D.D.C. 2018)....................7

*Pacific Car & Foundry Co. v. Pence*,
403 F.2d 949 (9th Cir. 1968) ....................24

*Plocek v. U.S. Lines Co.*,
43 F.R.D. 36 (E.D. Pa. 1967)....................24

*Population Inst. v. McPherson*,
797 F.2d 1062 (D.C. Cir. 1986)) ....................21

*Recht v. Metro Goldwyn Mayer Studio, Inc.*,
2008 WL 4460379 (W.D. Wis. Sept. 29) ....................3

*Rice v. Cayetano*,
528 U.S. 495 (2000) ....................15

*Rogers v. Civ. Air Patrol*,
129 F. Supp. 2d 1334 (M.D. Ala. 2001)....................7

**SEC v. Musk*,
2025 WL 2803858 (D.D.C. Oct. 2)....................2, 9, 10, 12, 13, 19

*SEC v. RPM Int'l*,
223 F. Supp. 3d 110 (D.D.C. 2016) ....................10, 11, 12, 16

*Semro v. Halstead Enters.*,
619 F. Supp. 682 (N.D. Ill. 1985)....................24

*Sheffer v. Novartis Pharmaceuticals Corp.*,
873 F. Supp. 2d 371 (D.D.C. 2012) ....................12, 19

*Smith v. Yeager*,
234 F. Supp. 3d 50 (D.D.C. 2017) ....................15

*Starnes v. McGuire*,
512 F.2d 918 (D.C. Cir. 1974) .......... 20, 21, 24

*Stewart Org. v. Ricoh Corp.*,
487 U.S. 22 (1988) .......... 8

*Sunbelt Corp. v. Noble, Denton & Assocs.*,
5 F.3d 28 (3d Cir. 1993) .......... 24

*Taylor v. Sturgell*,
553 U.S. 880 (2008) .......... 5

*Team Worldwide Corp. v. Wal-Mart*,
287 F. Supp. 3d 651 (E.D. Tex. 2018) .......... 2, 3, 4, 5

*Trans World Airlines v. Civ. Aeronautics Bd.*,
339 F.2d 56 (2d Cir. 1964) .......... 3, 5

*Trump v. CASA*,
606 U.S. 831 (2025) .......... 5

*Turner v. Fouche*,
396 U.S. 346 (1970) .......... 7

*Ukiah Adventist Hosp. v. FTC*,
981 F.2d 543 (D.C. Cir. 1992) .......... 20, 21, 22, 24

*Washington Metro. Area Transit Comm'n v. Holiday Tours*,
559 F.2d 841 (D.C. Cir. 1977) .......... 22

*White Hat v. Landry*,
475 F. Supp. 3d 532 (M.D. La. 2020) .......... 6

*Wilderness Workshop v. Harrell*,
676 F. Supp. 3d 1 (D.D.C. 2023) .......... 16

*Wolfram Alpha LLC v. Cuccinelli*,
490 F. Supp. 3d 324 (D.D.C. 2020) .......... 14, 15, 19

*Worth v. Jackson*,
451 F.3d 854 (D.C. Cir. 2006) .......... 6

*Ysleta del Sur Pueblo v. Nat'l Indian Gaming Comm'n*,
731 F. Supp. 2d 36 (D.D.C. 2010) .......... 14, 16, 19

**Statutes**

28 U.S.C. §1292(b) .......... 2, 20, 22

28 U.S.C. §1391(e) .......... 6, 7, 8

28 U.S.C. §1404(a) .......... 6

42 U.S.C. §11709 .......... 1

42 U.S.C. §11709(b) .......... 1, 6, 12

42 U.S.C. §11709(a) .......... 1, 6

**Rules and Regulations**

E.D. Tex. Local R. CV-83(b) ........ 24

LCvR 40.5(a)(3) ........ 18

**Other Authorities**

7C Wright, Miller & Kane, Fed. Prac. & Proc.: Civil 3d (rev. ed. 2007) ........ 4

Black's Law Dictionary (10th ed. 2014) ........ 2

Native Hawaiian Health Scholarship Program School Year 2026-2027 Application & Program Guidance (2026), perma.cc/RFQ6-AJ5C ........ 1

*Ryan v. Watson*, No. 1:26-cv-00270 (D. Haw.) ........ 18

S.D. Tex. Gen. Order 2024-2 ........ 24

U.S. Courts, *Federal Court Management Statistics* (Mar. 31, 2026), perma.cc/9V5A-5GN4 ........ 16

## INTRODUCTION

This action is a facial challenge to the constitutionality of a federal statutory requirement limiting eligibility for the Native Hawaiian Health Scholarship Program to one race: Native Hawaiians. Three members of Do No Harm attempted to apply for the Program but were barred after disclosing that they were not Native Hawaiian. Compl. ¶¶27-36. Do No Harm seeks prospective declaratory and injunctive relief against the federal agencies and officials responsible for enforcing that requirement. 42 U.S.C. §11709(a), (b)(1)(C). Papa Ola Lōkahi ("POL"), a nonprofit entity that helps administer the scholarship, voluntarily intervened to defend the Program and now seeks to transfer this case across the country on the grounds of convenience. POL's motion fails at every turn.

## BACKGROUND

Congress established the Program via statute in 1988. *See* 42 U.S.C. §11709. The statute limits eligibility to students who are Native Hawaiian and requires recipients to fulfill a service obligation in a qualifying facility in Hawaii. *Id.* §11709(a), (b)(1)(D).

The Program is administered through a cooperative agreement between the federal Defendants and Intervenor-Defendant POL. POL recommends candidates to the government, but the government makes the final selections and enters contracts with successful applicants. *See* Native Hawaiian Health Scholarship Program School Year 2026-2027 Application & Program Guidance 5-6, 33 (2026), perma.cc/RFQ6-AJ5C ("Program Guide").

Three members of Do No Harm attempted to apply for the Program but were immediately barred from proceeding further after disclosing they were not Native Hawaiian. Compl. ¶31, ¶35. Because the Program is created by a federal statute and the government "make[s] the final selection and awards," Program Guide at 33, Do No Harm sued HHS, the HHS Secretary, the Health Resources and Services Administration, and the HRSA Administrator. The sole claim in the complaint is brought under the equal-protection component of the Fifth Amendment. Compl. ¶¶37-46. DNH seeks a

declaration that §11709's racial exclusion is unconstitutional and an injunction prohibiting its enforcement. DNH does not challenge any individualized application, selection, or placement decision.

POL moved to intervene in this action on May 15, 2026 and filed its motion to transfer on grounds of inconvenient venue on July 14, 2026. ECF Nos. 11, 32.

**ARGUMENT**

The Court should deny POL's motion for at least three independent reasons. First, because POL voluntarily intervened in this action, it waived its right to change venue. *Eleutian Tech. v. Glob. Educ. Techs.*, 2008 WL 11337640, at *3-4 (D. Wyo. Dec. 30). Second, this action could not have been originally brought in the District of Hawaii. *Hoffman v. Blaski*, 363 U.S. 335, 342 (1960). Third, even if the action could have been brought in Hawaii, the private- and public-balancing factors point overwhelmingly against transfer. *SEC v. Musk*, 2025 WL 2803858, at *2 (D.D.C. Oct. 2). If the Court disagrees and orders transfer, the Court should certify its order under 28 U.S.C. §1292(b) and stay its effect for 30 days to permit Do No Harm to seek orderly appellate review.

**I. POL waived venue arguments by intervening.**

"[A]n intervenor generally is held to have waived his privilege to change the venue of a suit." *Consumers Union of U.S. v. Consumer Product Safety Comm'n*, 590 F.2d 1209, 1222 n.65 (D.C. Cir. 1978) (quoting *Commonwealth Edison Co. v. Train*, 71 F.R.D. 391, 394 (N.D. Ill. 1976)). Under that rule, intervenors cannot question either "the propriety" or the "convenience of a venue they choose to enter." *Team Worldwide Corp. v. Wal-Mart*, 287 F. Supp. 3d 651, 661 (E.D. Tex. 2018).

"By definition, an intervenor is 'someone who voluntarily enters a pending lawsuit because of a personal stake in it.'" *Id.* at 658-59 (quoting *Intervenor*, Black's Law Dictionary (10th ed. 2014)). "This choice to intervene (or consent to proceed in a particular jurisdiction and venue) has real and far-reaching consequences." *Id.* at 659. For example, intervenors waive objections to personal jurisdiction by submitting themselves to the Court. *See Buesgens v. Brown*, 567 F. Supp. 2d 26, 36 n.10 (D.D.C. 2008); *see also Cty. Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477, 483 (6th Cir. 2002) ("[A] motion to intervene

is fundamentally incompatible with an objection to personal jurisdiction."); *In re Bayshore Ford Truck Sales*, 471 F.3d 1233, 1249 (11th Cir. 2006). And States can similarly waive sovereign immunity by intervening. *See Clark v. Barnard*, 108 U.S. 436, 447 (1883) (finding that an intervenor's "voluntary submission to [the court's] jurisdiction" constituted waiver of sovereign immunity); *see also 84 Video/Newsstand v. Sartini*, 2009 WL 10656014, at *22 (N.D. Ohio June 22); *Team Worldwide*, 287 F. Supp. 3d at 659.

Venue is no different. "Case law has repeatedly held that an intervenor is held to have waived his privilege to change the venue of a suit." *Eleutian Tech.*, 2008 WL 11337640, at *3. "Venue is a privilege personal to a defendant in a civil suit and a person intervening on either side of the controversy may not object to improper venue." *Trans World Airlines v. Civ. Aeronautics Bd.*, 339 F.2d 56, 63-64 (2d Cir. 1964). Before the Federal Rules of Civil Procedure were promulgated, the Supreme Court held in *Central Trust Corporation v. McGeorge* that an "intervening" party "submitted itself to the jurisdiction of the court" and could not challenge venue. 151 U.S. 129, 135 (1894).

Nothing has changed since then. Accepted "by courts and treatises alike," "the cases finding that intervenors cannot challenge venue are not antiquated, dust-encrusted relics, but instead date all the way through the present." *See Defs. of Wildlife v. Bureau of Ocean Energy Mgmt., Regul., & Enf't*, 791 F. Supp. 2d 1158, 1174 (S.D. Ala. 2011); *see, e.g.*, *Train*, 71 F.R.D. at 394 (denying intervenor's motion to transfer venue because an intervenor enters an action "subject to the venue which already exists"); *Asbury Glen/Summit Ltd. P'ship v. Southeast Mortgage Co.*, 776 F. Supp. 1093, 1096 (W.D.N.C. 1991) (stating as a "general matter" that an "intervenor cannot question venue"); *Recht v. Metro Goldwyn Mayer Studio, Inc.*, 2008 WL 4460379, at *2 (W.D. Wis. Sept. 29) (an intervenor "would have no standing to question the venue in this case"); *Dexia Credit Local v. Rogan*, 2008 WL 4543013, at *6 (N.D. Ill. Oct. 9, 2008) (intervenors "likely have waived any objection to venue by intervening in this proceeding"); *Missouri v. U.S. Food & Drug Admin.*, 2025 WL 2825980, at *5 (N.D. Tex. Sept. 30) ("By intervening at

all, [the intervenor] waived its venue objection."). The leading treatise is squarely in accord: Wright and Miller state that "[b]y voluntarily entering the action the intervenor has waived the privilege not to be required to engage in litigation in that forum." 7C Wright, Miller & Kane, Fed. Prac. & Proc.: Civil §1918 (3d ed. April 2026 update). Supreme Court precedent also supports this commonsense understanding. In *Atlantic Marine Construction Co. v. United States District Court*, the Court held that parties who agree to litigate in a particular forum "waive the right to challenge the preselected forum as inconvenient" and therefore may not rely on their private interests to obtain transfer under §1404(a). 571 U.S. 49, 64 (2013). The same principle applies to a voluntary intervenor. *Cf. Central Trust*, 151 U.S. at 135 (an original defendant's voluntary submission to the court "could not be overruled at the instance of" parties later admitted by intervention).

POL might invoke *Intrepid Potash-New Mexico v. U.S. Dept. of Interior*, 669 F. Supp. 2d 88, 91-93 (D.D.C. 2009), for the proposition that intervenors still may seek to transfer venue under §1404(a) for convenience. But that nonbinding decision is an outlier. The "repeatedly echoed" rule is that intervenors—because they voluntarily chose to litigate in the venue—cannot seek to change it even for "convenience." *Team Worldwide*, 287 F. Supp. 3d at 660-61; *see, e.g.*, *Train*, 71 F.R.D. at 394 (denying an intervenor's transfer motion alleging "inconvenient forum" under §1404(a)); *Beam Laser Sys. v. Cox. Commc'ns*, 117 F. Supp. 2d 515, 517-18 (E.D. Va. 2000); *Eleutian*, 2008 WL 11337640, at *3-4. And though *Intrepid* tried to distinguish between a §1404(a) transfer based on inconvenience and a §1406 transfer based on impropriety, 669 F. Supp. 2d at 92, there is "no basis for making such a distinction," *Beam Laser*, 117 F. Supp. 2d at 518 n.1. If an intervenor's consent to venue by intervening waives objections to an improper venue, it necessarily waives objections based on convenience.

*Intrepid*'s contrary reasoning rested on the premise that an intervenor, once admitted, becomes a full defendant entitled to the same rights as an original defendant—including the right to seek a convenience transfer. But that premise begs the question. That an intervenor is a full "party" says

nothing about which of a party's privileges it keeps and which it surrenders by choosing to enter a forum others selected. An intervenor is a full party, yet it still waives objections to personal jurisdiction, and a sovereign intervenor still waives its immunity from suit—precisely because it volunteered to litigate where the case already sat. *See supra*; *Clark*, 108 U.S. at 447. Venue is simply one more privilege "personal to a defendant" that an intervenor forfeits by its voluntary submission. *Trans World Airlines*, 339 F.2d at 63-64. And regardless of whether a venue is improper or inconvenient, an intervenor voluntarily puts himself there and waives the "privilege to change the venue of a suit." *Consumers Union*, 590 F.2d at 1222 n.65; *see also Team Worldwide*, 287 F. Supp. 3d at 661.

Treating objections to inconvenient venue like objections to improper venue, personal jurisdiction, or sovereign immunity also makes good sense. POL was never required to litigate in this District at all. If POL preferred a Hawaii forum, it could have stayed out of this case and awaited its outcome—a judgment that would not bind POL if it came out the other way. *See Taylor v. Sturgell*, 553 U.S. 880, 898 (2008) (recognizing "the general rule that a litigant is not bound by a judgment to which she was not a party"). And even if this Court holds §11709's eligibility criterion unconstitutional, POL would remain free to protect its interests in Hawaii by suing the federal Defendants there to enforce the statute that created the Program. *See Trump v. CASA*, 606 U.S. 831, 844 (2025) ("Neither declaratory nor injunctive relief … can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular … plaintiffs.") (cleaned up). Having chosen to litigate in this Court, POL cannot invoke its own convenience to relocate the action thousands of miles away from the original parties.

## II. This action could not have been brought in Hawaii.

Even if a party who voluntarily intervenes in a case may still move to transfer that case on grounds of convenience, POL's motion fails on the merits. Section 1404(a) permits transfer "[f]or the convenience of parties and witnesses, in the interest of justice," to a district where the action "might

have been brought" or to which all parties have consented. 28 U.S.C. §1404(a). Whether an action could have been brought in a different venue is a "threshold" question. *Akiachak Native Cmty v. Dep't of Interior*, 502 F. Supp. 2d 64, 67 (D.D.C. 2007).

POL's request to transfer fails because this case could not "have been brought" in the District of Hawaii. 28 U.S.C. §1404(a). Defendants do not reside in the District of Hawaii. §1391(e)(1)(A). Neither do Plaintiffs. §1391(e)(1)(C). POL nevertheless asserts that Hawaii might have been a proper venue because "a substantial part of the events allegedly giving rise to DNH's claim *would have* occurred in Hawai'i." Mot. 8-9 (emphasis added). POL is wrong for at least two reasons.

***First***, the federal government's decision to adopt and enforce a race-based eligibility criterion for the scholarship did not occur in Hawaii. Congress enacted 42 U.S.C. §11709(a)(2), which restricts the scholarship to "Native Hawaiians," in this District. *See Garcia v. Acosta*, 393 F. Supp. 3d 93, 109 (D.D.C. 2019) (a challenge to "a Department-wide policy and practice" was formulated in D.C., not N.D. Ill.). That statute directs the HHS Secretary, who resides and performs his official duties in this District, to "select scholarship recipients." 42 U.S.C. §11709(b)(1)(C). *See Garcia*, 393 F. Supp. 3d at 109 (finding N.D. Ill. an improper venue because "the Secretary of Labor, who is ultimately responsible for the policy and practice, resides in the District of Columbia"); *see also White Hat v. Landry*, 475 F. Supp. 3d 532, 552-53 (M.D. La. 2020) (in a facial challenge, "venue is proper in the state capitol, where the law was passed," because "[t]he passage of the [statute] constitutes a substantial part of the events giving rise to the claim").

Do No Harm facially challenges the constitutionality of the statutorily mandated race requirement. *See, e.g.*, Compl. ¶1, ¶7, ¶12, ¶15. This race requirement—enacted by Congress and enforced by the Secretary from this District—injures Do No Harm's members. ¶¶27-36. In such cases, the injury "is the inability to compete on an equal footing." *Worth v. Jackson*, 451 F.3d 854, 859 (D.C. Cir. 2006). That injury is complete when the barrier to compete is erected, *Ne. Fla. Chapter of Associated Gen.*

*Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993), and in this case that barrier is the federal statute prohibiting Do No Harm members from applying for the Program because of their race. *Id.*; *see also Turner v. Fouche*, 396 U.S. 346, 362 (1970) ("[Plaintiffs] have a federal constitutional right to be considered for public service without the burden of invidiously discriminatory disqualifications."). That barrier was erected in this District, not Hawaii. *See Ngonga v. Sessions*, 318 F.Supp.3d 270, 275 (D.D.C. 2018) ("[C]ourts generally focus on where the decisionmaking process occurred to determine where the claims arose."); *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009).

POL nevertheless argues that venue initially would have been appropriate in Hawaii because POL reviews completed applications, interviews eligible applicants, makes recommendations to HRSA, and helps navigate post-award support. *See* Mot. 7-9. Had Do No Harm challenged an "erroneous adjudication of a particular [scholarship] application" by POL, perhaps Hawaii could have been a proper venue. *Garcia*, 393 F. Supp. 3d at 109. Instead, Do No Harm is challenging the federal government's "policy and practice," which was not "formulated" in Hawaii. *Id.*

***Second***, venue cannot be based on hypothetical events. The venue statute asks whether "a substantial part of the events or omissions giving rise to the claim *occurred*" in the proposed forum. §1391(e)(1)(B) (emphasis added). A hypothetical event that "has yet to occur and may never occur … is woefully insufficient to show that a 'substantial part of the events … giving rise to [the plaintiff's] claim occurred'" in a venue. *Cherdak v. AAA*, 443 F. Supp. 3d 134, 151 (D.D.C. 2020); *see also Rogers v. Civ. Air Patrol*, 129 F. Supp. 2d 1334, 1339 (M.D. Ala. 2001) (allegations that a statute "will require performance at a later date" cannot support venue because §1391(e) requires events that "occurred," and events "succeeded the filing of the Complaint … could not logically have given rise to" the claim).

POL states that Hawaii would have been a proper venue because if Do No Harm's members were allowed to submit their applications for the scholarship, "their applications *would have* been processed by [POL] in Hawai'i." Mot. 7 (emphasis added). But POL never evaluated any of Do No Harm

members' applications; the members "were barred" from applying "after disclosing they were not Native Hawaiians." Compl. ¶35. The complaint does not allege that any member submitted a completed application, received an interview, was recommended by POL to HRSA, was considered for final selection, or received a service placement. Indeed, the complaint makes clear that, due to the federal government's racial exclusion, *none* of those events occurred. Whatever involvement POL might have with applications that make it past the federal government's racial bar—applications that are not at issue in this facial challenge—is not "a substantial part of the events or omissions giving rise to [Do No Harm's] claim." 28 U.S.C. §1391(e)(1)(B).

## III. The balance of factors weighs heavily against transfer.

Even assuming this action could have been brought in Hawaii, POL's motion still fails. Section 1404(a) requires an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). That "case-by-case" inquiry is grounded in a series of private-interest and public-interest factors that guide the Court's approach. *Id.*; *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127-28 (D.D.C. 2001). The plaintiff's chosen forum is "accorded great deference" when there is a substantial connection between the forum and the subject matter of the action. *Akiachak*, 502 F. Supp. 2d at 67. Unless the balance of the interests "strongly" weighs in favor of transfer, the plaintiff's choice of forum "should rarely be disturbed." *Id.* The party seeking transfer bears the burden of showing that the balance of relevant factors favors transfer. *City of West Palm Beach v. U.S. Army Corps of Engineers*, 317 F. Supp. 3d 150, 153 (D.D.C. 2018); *see also Jalloh v. Underwood*, 300 F. Supp. 3d 151, 155-56 (D.D.C. 2018). POL fails to carry its burden.

### A. The private-interest factors disfavor transfer.

The private-interest factors do not show that Hawaii is materially more convenient than this District. These factors include: "(1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and

defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof." *Bosworth*, 180 F. Supp. 2d at 127. Do No Harm's forum choice is entitled to great deference; POL's preference receives little, if any, weight; the claim did not arise in Hawaii; and the practical convenience factors are either neutral or favor retaining the case in this District. POL thus cannot satisfy its burden to show the balance of these factors favors transfer. *See Musk*, 2025 WL 2803858, at *2.

**1. DNH's forum choice is entitled to deference, while POL's preference receives none.**

"A plaintiff's choice of forum is ordinarily entitled to deference." *Nat'l Ass'n of Homebuilders*, 675 F. Supp. 2d at 179. POL repeats that this District is not Do No Harm's home, so its choice does not receive maximum deference. Mot. 17-20. But even when "the plaintiff's chosen forum … is not the plaintiff's home forum," the plaintiff's choice still receives "substantial deference" when there is "a connection between the underlying case and [the forum]." *Nat'l Ass'n of Homebuilders*, 675 F. Supp. 2d at 179-80; *see also Musk*, 2025 WL 2803858, at *2. That "deference … outweighs the deference conferred on the defendant's choice of forum." *Nat'l Ass'n of Home Builders*, 675 F. Supp. 2d at 180.

Do No Harm's choice of forum is entitled to great deference because there is plainly "a connection between the underlying case and this district." *Id.* at 179-80. Where a challenged governmental policy was formulated "in this district," there is a "sufficiently substantial nexus to this district to warrant deference." *Akiachak*, 502 F. Supp. 2d at 68.

As discussed above, this case directly challenges a federal statutory eligibility requirement, names HHS and the Secretary—both located in this District—as Defendants, and seeks an injunction prohibiting the Secretary from enforcing or applying that requirement. Compl. ¶7, ¶¶11-12, ¶¶37-46 & Prayer for Relief ¶b. The complaint does not challenge any individualized application decision, and no one (including POL) took any action on Do No Harm members' applications in Hawaii. *See Garcia*, 393 F. Supp. 3d at 109. That matters because "when a plaintiff directly challenges a policy promulgated

in the District of Columbia," with no individualized decision, that "weighs in favor of retaining venue" in this District. *See Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 128-29 (D.D.C. 2018). And this is so even if the "impact of any decision will be felt" elsewhere. *Akiachak*, 502 F. Supp. 2d at 67. This factor thus warrants great deference to Do No Harm's choice of forum and strongly weighs against transfer.

Likewise, POL's preference does not receive deference merely because Hawaii is its home. A defendant's choice of forum is "not ordinarily entitled to deference." *Musk*, 2025 WL 2803858, at *4; *accord SEC v. RPM Int'l*, 223 F. Supp. 3d 110, 116 (D.D.C. 2016). The motion identifies no reason for exceptional weight beyond POL's residence and travel burden—considerations already captured by the party-convenience factor. *See infra* 11-12. Thus, this factor does not favor transfer. And the balance would tilt even more decisively against POL if the federal Defendants—who have not sought transfer—also prefer to litigate here. Should they oppose transfer, the shared preference of the plaintiff *and* the original defendants would weigh powerfully against uprooting the case to suit a lone intervenor.

**2. Do No Harm's claim did not arise in Hawaii.**

This Court "generally focus[es] on where the decisionmaking process occurred to determine where the claims arose." *Nat'l Ass'n of Home Builders*, 675 F. Supp. 2d at 179. As explained above, the decision to erect a race-based barrier that injured Do No Harm's members took place in this District. *See supra* 6-7. None of the "decisionmaking"—or any material event for that matter—relevant to Do No Harm's claim against the federal government occurred in Hawaii. *See id.*; *Garcia*, 393 F. Supp. 3d at 109; *see also Akiachak*, 502 F.Supp.2d at 67-68 (finding §1404(a) private interest factors favor this District in a facial challenge to an administrative rule).

Moreover, POL acknowledges that "HRSA makes the final selection of Scholarship Program recipients and processes the payment of Scholarship awards." Mot. 21. That decision doesn't take place in Hawaii. POL downplays that role as a "small degree of involvement" in managing the Program that is not "substantial enough … to tip the scales against transfer." Mot. 22 (quoting *Alaska v.*

*Department of the Interior*, 2025 WL 1730193, at *10 (D.D.C. June 23)). The notion that making the "final selection" of winners and processing awards to the tune of millions of dollars is a "small degree of involvement" blinks reality.

POL tries to obfuscate the fact that the relevant conduct takes place thousands of miles away from Hawaii by relying principally on what "would have" occurred had DNH's members advanced to completed-application review, interviews, recommendations, and placement. *See* Mot. 7 & n.5, 21-22. But any review that POL "would have" undertaken in this counterfactual world is irrelevant. The complaint alleges that each member was stopped by the ancestry requirement at the threshold of the online application process. Compl. ¶31, ¶35. Thus the later review that POL "would have" undertaken never occurred precisely because DNH's members were already injured before POL could have taken any action to further exclude them from Hawaii.

**3. Transfer would shift inconvenience rather than create a net gain for the parties or witnesses.**

"In order for the burden suffered by a party from litigating in a particular forum to weigh in favor of transfer, litigation in the transferee district must not merely shift inconvenience to the non-moving party; instead, it should lead to increased convenience overall." *Mazzarino v. Prudential Insurance Co. of America*, 955 F. Supp. 2d 24, 31 (D.D.C. 2013); *see also RPM Int'l*, 223 F. Supp. 3d at 116-17 (transfer that would only "shift inconvenience to the non-moving party" does not favor transfer). This factor weighs heavily against transfer because POL would merely flip the inconvenience to the original parties without creating any net, overall convenience.

POL fails to show that Hawaii is more convenient for the parties "overall." *Mazzarino*, 955 F. Supp. 2d at 31. Do No Harm is based in Utah, HHS and the Secretary are in Washington D.C., and HRSA and its Administrator are in nearby Maryland. Compl. ¶7, ¶¶11-14. POL exhorts this Court at length about the burden imposed upon it by travel from Hawaii to Washington D.C., but that burden would be equally severe on each of the original Defendants in this action who would have to travel

from Washington D.C. to Hawaii if this action were transferred. *See, e.g.*, Mot. 23 ("The District of Columbia is roughly 4,800 miles away from Honolulu" and "[t]ravel between Honolulu and the District of Columbia is extraordinarily difficult and expensive."). And Do No Harm would have to travel much farther—nearly a thousand miles farther—to Hawaii than to Washington D.C.

POL does not explain why its travel burden should outweigh the burden that transfer would impose on all the other parties, especially when POL chose to intervene here. And if the original Defendants likewise prefer this District, the combined convenience of both original parties should outweigh a lone intervenor's preference. Section 1404(a) requires a net increase in convenience, not a transfer that merely "shift[s] inconvenience" from the movant to its opponents. *Mazzarino*, 955 F. Supp. 2d at 31. And, to state the obvious, the Do No Harm members' desire to provide medical care in Hawaii in the future is not consent to litigate there. *Contra* Mot. 24-25. The party-convenience factor does not weigh in favor of transfer.

Nor does theorizing about unidentified witnesses support transfer. POL says only that, "if witnesses are called," most "might" reside in Hawaii. *See* Mot. 24. That is speculation. Once again, Do No Harm's members were excluded at the threshold because of the racial exclusion enforced by the Secretary and HRSA. *See* 42 U.S.C. §11709(b)(1)(C). They never progressed to review under POL that might have taken place in Hawaii. And, in any event, POL describes no expected testimony and names no witness who would be unwilling or unable to appear in this District. A meaningful showing requires those specifics. *See Sheffer v. Novartis Pharmaceuticals Corp.*, 873 F. Supp. 2d 371, 378 (D.D.C. 2012); *see also RPM Int'l*, 223 F. Supp. 3d at 117-18 (movant must specify "what a nonresident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel"); *Bourdon v. U.S. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 305 (D.D.C. 2017) (witness convenience considered "only to the extent that the witnesses may actually be unavailable for trial"). Finally, this facial challenge is likely to turn principally on the parties' briefing, and thus the importance

of witness testimony is reduced. *See M&N Plastics, Inc. v. Sebelius*, 997 F. Supp. 2d 19, 25 (D.D.C. 2013). Accordingly, witness convenience does not favor transfer, and the parties' convenience weighs strongly against transfer.

**4. Electronic and dispersed records make access to proof neutral.**

The District of Hawaii is also not a more convenient forum for access to sources of proof. As a threshold matter, extensive discovery is likely unnecessary to prove the merits of Do No Harm's claim that Defendants' race-based scholarship is facially unconstitutional. "[A] facial challenge to the text of a statute does not typically require discovery for resolution because the challenge focuses on the language of the statute itself." *Gen. Elec. Co. v. Johnson*, 362 F. Supp. 2d 327, 337 (D.D.C. 2005). Even if discovery were necessary, the discovery would be targeted at the government Defendants, who impose the race requirement and "mak[e] the final selection of Scholarship Program recipients." *See* Mot. 21. The government Defendants are located near the D.D.C. Courthouse—not Hawaii.

And even if discovery were sought from POL, POL concedes that electronic discovery has made document location "increasingly insignificant," and it identifies no particular record that would be difficult to access in this District. *See* Mot. 25 (quoting *Holland v. ACL Transportation Services, LLC*, 815 F. Supp. 2d 46, 58 (D.D.C. 2011)). And there is no physical site or tangible evidence requiring adjudication in Hawaii. Nonspecific assertions that records are "likely" located in the proposed forum do not move this factor. *See Musk*, 2025 WL 2803858, at *5. Because any government documents that might be subject to discovery are with Defendants—who are in or near D.C., not in Hawaii—this factor weighs against transfer.

In any event, Do No Harm does not intend to take discovery of anyone in Hawaii. And in the event discovery there becomes necessary, any attendant burden could be managed through remote depositions or by Do No Harm's counsel traveling to Hawaii for that limited purpose—a far more efficient course than relocating the entire litigation to Hawaii.

**B. The public-interest factors disfavor transfer.**

For public-interest factors, courts consider "(1) the transferee's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Bosworth*, 180 F. Supp. 2d at 128. Additionally, this Court has also considered "the interest in avoiding duplication of judicial resources and the possibility of inconsistent results." *Ysleta del Sur Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 40 (D.D.C. 2010).

The governing-law factor is neutral, the two courts' dockets do not differ materially in congestion, and there is no risk of duplicative proceedings. And because the challenged program is open to students nationwide but limited by race, this is not a matter of purely local interest. The public-interest factors thus weigh against transfer.

**1. Both courts are equally familiar with the governing federal law.**

The governing-law factor does not favor transfer because this case is governed entirely by federal law. Do No Harm asserts a claim under the equal-protection component of the Fifth Amendment and challenges an eligibility requirement established by a federal statute. Compl. ¶¶37-46. No question of Hawaii law is presented. This Court "is presumed to be equally familiar with the federal laws governing the plaintiff's claims" as all other district courts. *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 335 (D.D.C. 2020) (cleaned up); *see also FHFA v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 194 (D.D.C. 2012); *Ctr. for Biological Diversity v. Ross*, 310 F. Supp. 3d 119, 126 (D.D.C. 2018) (resolving federal statutory claims "require[s] statutory interpretation, a task any federal court is competent to undertake").

POL attempts to overcome the rule that all district courts are "presumed to be equally familiar" with federal law, *Wolfram*, 490 F. Supp. 3d at 335, by emphasizing the District of Hawaii's "extensive experience in adjudicating challenges to federal and state programs serving Native Hawaiians." *See* Mot. 14. This "body of caselaw" concerning Native Hawaiian programs, in POL's view, means

this Court is "not equally familiar with the governing law as the District of Hawaii." Mot. 14-15. POL is wrong.

Whether the District of Hawaii has adjudicated more cases involving challenges to state preferences for Native Hawaiians has little to do with this facial equal protection challenge to a federal statute, and POL's invocation of the "political status of Native Hawaiians" changes nothing. Section 11709(a)(2) facially grants a preference in favor of Native Hawaiians. The Supreme Court has already held that preferences for Native Hawaiians are "race-based," *Rice v. Cayetano*, 528 U.S. 495, 517 (2000), and that "all racial classifications … must be analyzed by a reviewing court under strict scrutiny," *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995). This Court is no less capable of applying the reams of Supreme Court precedent on strict scrutiny than the District of Hawaii and "is presumed to be equally familiar with the federal laws governing the plaintiff's claims." *Wolfram*, 490 F. Supp. 3d at 335; *cf. Am. Fed'n of Gov't Emps. v. United States*, 195 F. Supp. 2d 4 (D.D.C. 2002) (adjudicating a facial federal preference for Native Hawaiians). The governing-law factor does not favor transfer.

**2. The District of Hawaii is not substantially more congested than this Court.**

Court congestion carries little weight unless one court's docket is "substantially more congested" than the other. *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 315 (D.D.C. 2015). In evaluating potential speed, courts in this District generally compare the median time from filing to disposition. *Smith v. Yeager*, 234 F. Supp. 3d 50, 60 (D.D.C. 2017); *see also* Mot. 15.

The outdated filing-to-*trial* figures POL cites are thus beside the point. The report POL cites supplies a current filing-to-trial figure for this District but no current comparable figure for Hawaii; the Hawaii figure cited by POL is from 2022. *See* Mot. 15-16. More broadly, POL offers no reason to expect this facial challenge to the constitutionality of a federal statute will require a trial. The relevant comparison is therefore, as this Court has explained, the current filing-to-*disposition* measure. *Yeager*, 234 F. Supp. 3d at 60.

The most recent available statistics report a median civil filing-to-disposition time of 7.3 months in this District and 6.2 months in the District of Hawaii—a difference of less than five weeks. *See* U.S. Courts, *Federal Court Management Statistics* 2, 70 (Mar. 31, 2026), perma.cc/9V5A-5GN4. A median difference of approximately 33 days in time from filing to disposition is not evidence of "substantial" congestion. *Jewell*, 87 F. Supp. 3d at 315; *see also Ctr. for Biological Diversity*, 310 F. Supp. 3d at 126-27. This factor does not favor transfer.

**3. This case is not about an exclusively local controversy.**

In evaluating a State's interest in deciding a case at home, this Court considers "whether the impact of the litigation is local to one region." *Ysleta del Sur Pueblo*, 731 F. Supp. 2d at 41. This Court has often denied motions to transfer under §1404(a) where cases raised nationally significant questions of federal law and Washington-based officials were responsible for the challenged action. *See, e.g.*, *Bosworth*, 180 F. Supp. 2d at 128-29 ("[B]ecause both of the plaintiffs' counts focus on interpretation of federal statutes, and because federal government officials in the District of Columbia were involved in the decision [at issue] … this case has some national significance and has a nexus to the District of Columbia."); *Conserve Sw. Utah v. U.S. Dep't of the Interior*, 2022 WL 20700168, at *6 (D.D.C. Sept. 7) ("Courts routinely deny motions to transfer from the District of Columbia when agency heads are involved in the underlying decision that impacted the land outside the district."); *Wilderness Workshop v. Harrell*, 676 F. Supp. 3d 1, 6 (D.D.C. 2023); *see also Ctr. for Biological Diversity*, 310 F. Supp. 3d at 127-28; *RPM Int'l*, 223 F. Supp. 3d at 118-19.

Here, the controversy is not exclusively local to Hawaii. *See Bosworth*, 180 F. Supp. 2d at 128-29. The scholarship program is not limited to students currently living in Hawaii. Rather, it's open to students in and outside Hawaii to apply, though it is racially limited to Native Hawaiians. If Do No Harm prevails, deserving students in all 50 States and the District of Columbia might be eligible to apply for the scholarship and agree to serve in Hawaii. *See Heckler v. Mathews*, 465 U.S. 728, 740 (1984)

(a remedy mandating equal treatment "can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class"). Thus this is a quintessentially nationwide case.

Moreover, Do No Harm is not challenging an individualized application review that took place in Hawaii, a particular placement decision made in Hawaii, or the operation of a specific Hawaii facility. Rather, Do No Harm brings a facial challenge against a federal statutory eligibility requirement and seeks prospective relief against federal agencies and officials. Compl. ¶¶37-46 & Prayer for Relief. The case thus solely presents a federal constitutional question concerning whether the national government may continue applying a criterion enacted by Congress. Hawaii may experience the Program's principal *effects*, but the governmental conduct and legal issues are not confined to Hawaii.

That distinction separates this action from one of POL's favorite cases: *Alaska v. Department of the Interior*. *Alaska* concerned federal authorization of gaming on a particular Native allotment in Alaska. *See* Mot. 10. Both the physical subject of the dispute and the relevant jurisdictional consequences were tied to Alaska alone. The *Alaska* court thus explained that the local interest factor predominated because the subject of the case—the land—was obviously in Alaska, and even the "agency decisions and legal interpretations relate <u>exclusively to Alaksa</u>." 2025 WL 1730193, at *8 (emphasis in original). This case implicates more than just Hawaii. It challenges a generally applicable eligibility rule authorized by a federal statute. Even the *Alaska* court, in the context of an APA action, expressly distinguished Alaska's singular local interest from cases with national impact. *Id.* at *9. That rationale applies here, where DNH facially challenges the constitutionality of a statutory exclusion of non-Native Hawaiian students nationwide that the HHS Secretary implements. Accordingly, the local-interest factor is neutral at best.

#### 4. ***Ryan v. Watson* presents no meaningful risk of duplicative proceedings or inconsistent results.**

Finally, POL gestures at the pending litigation in *Ryan v. Watson*, No. 1:26-cv-00270 (D. Haw.), as presenting a risk of duplicative litigation. POL bases this argument on the "overarching thematic similarities" between this case and *Ryan*. *See* Mot. 16. But "thematic similarities" do not present a risk of duplicative litigation favoring transfer. Otherwise, the many First Amendment free-speech suits currently percolating in district courts should presumably all be consolidated in a single district due to the "thematic similarities" between cases with citizens hoping to express their preferred viewpoints.

*Ryan* challenges eligibility for Hawaiian homestead leases under the state Hawaiian Homes Commission Act. *See* Doc. 1, *Ryan v. Watson*, No. 1:26-cv-00270 (D. Haw. June 1, 2026). This action challenges eligibility for a federal scholarship under the Native Hawaiian Health Care Act. These two cases involve different plaintiffs, defendants, programs, statutes, operative facts, evidence, and relief. There is no shared applicant, application, property, agency decision, or administrative record. Resolution of this action will not determine whether the plaintiff in *Ryan* is entitled to a homestead lease, and resolution of *Ryan* will not determine whether Do No Harm members may be barred from competing for a federal scholarship based on their race. Although both cases may require courts to consider the constitutionality of race-based preference for Native Hawaiians, abstract overlapping questions of law do not create duplicative litigation. *See DSCC v. Trump*, 828 F. Supp. 3d 1, 6 (D.D.C. 2026) ("cases are not 'related'" when "they do not 'involve common issues of fact'"). The possibility that two courts might reach different conclusions about a broadly similar constitutional question is an ordinary feature of the federal judicial system, not a reason to transfer otherwise orthogonal actions. *See Detroit Int'l Bridge Co. v. Gov't of Canada*, 787 F. Supp. 2d 47, 54 (D.D.C. 2011).

This Court's related-case rule provides a useful comparison. It treats civil cases as related when they concern common property, common issues of fact, the same event or transaction, or the same patent. LCvR 40.5(a)(3); *see also DSCC*, 828 F. Supp. 3d at 6. *Ryan* and this case involve none of those

connections. The transfer cases on which POL relies address genuinely related actions in which parallel proceedings threatened duplicative factual adjudication or conflicting relief. *See, e.g.*, *Ysleta del Sur Pueblo*, 731 F. Supp. 2d at 41-42, 41 n.3 ("[A] decision … will directly affect proceedings in that case."). POL identifies no comparable risk here. Accordingly, concerns about duplicative litigation are a red herring and do not favor transfer.

*

Unless the private- and public-interest factors "strongly" favor transfer, a plaintiff's chosen forum "should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). That deference is at its height here, where Do No Harm challenges a federal policy enacted and enforced in this District—a "sufficiently substantial nexus to this district to warrant deference." *Akiachak*, 502 F. Supp. 2d at 68.

The private-interest factors weigh against transfer. Do No Harm's forum choice commands great deference while POL's residence-based preference receives little or none, *Musk*, 2025 WL 2803858, at *3; the claim arose in this District, not Hawaii, *Garcia*, 393 F. Supp. 3d at 109; transfer would merely shift inconvenience onto the original parties, *Mazzarino*, 955 F. Supp. 2d at 31; POL names no specific witness or testimony, *Sheffer*, 873 F. Supp. 2d at 378; and this facial challenge will turn on the parties' briefing, so access to proof is neutral, *Musk*, 2025 WL 2803858, at *5.

The public-interest factors likewise disfavor transfer. Both courts are presumed equally familiar with the governing law, *Wolfram*, 490 F. Supp. 3d at 335; the roughly 33-day difference in median filing-to-disposition time is not "substantial" congestion, *Jewell*, 87 F. Supp. 3d at 315; and because this case challenges a nationwide eligibility rule enacted and enforced in this District, the local-interest factor does not favor Hawaii, *Ysleta*, 731 F. Supp. 2d at 40-41. Nor does the unrelated *Ryan* litigation create any risk of duplicative proceedings or inconsistent results. *DSCC*, 828 F. Supp. 3d at 6.

**IV. If the Court grants transfer, it should stay its order to permit appellate review.**

If the Court is inclined to grant transfer, it should stay that order for 30 days and delay transmitting the case file to the District of Hawaii long enough for Do No Harm to seek review in the D.C. Circuit. A brief stay is necessary because otherwise appellate review will be entirely foreclosed. *In re Briscoe*, 976 F.2d 1425, 1426 (D.C. Cir. 1992). The Court should also certify its order under 28 U.S.C. §1292(b) to permit appellate review without recourse to a writ of mandamus.

A transfer order under §1404(a) occupies an unusual procedural position. It is not appealable as of right, and it is not "reviewable" under the collateral-order doctrine. *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 546 (D.C. Cir. 1992). Review lies, if anywhere, in a petition for a writ of mandamus in the transferor circuit. *Hill v. Henderson*, 195 F.3d 671, 677 (D.C. Cir. 1999). But that avenue closes the instant the case is docketed in the transferee court: "if a case is physically transferred before an appeal or a petition for mandamus has been filed, the court of appeals in the transferor circuit has no jurisdiction to review the transfer"—thus an order carried out quickly "may effectively become immune from appellate scrutiny." *In re Briscoe*, 976 F.2d at 1426; *see also Chrysler Credit Corp. v. Country Chrysler*, 928 F.2d 1509, 1517 (10th Cir. 1991) (Once the case file is transferred, appellate jurisdiction in the transferor circuit "is terminated; the transfer order becomes unreviewable as of that date.").

For precisely this reason, the en banc D.C. Circuit has explained that "[a]dequate and orderly review … requires that physical transfer be delayed for a period of time after entry of the transfer order, during which time review may be sought in the transferor circuit." *Starnes v. McGuire*, 512 F.2d 918, 935 (D.C. Cir. 1974). Because "physical transfer of the original papers in a case to a permissible transferee forum deprives the transferor circuit of jurisdiction to review the transfer," procedures must give the aggrieved party "a fair opportunity to seek review in the transferor circuit prior to the physical transfer of the record." *Id.* at 924. To that end, *Starnes* directed that the Clerk's office "be alert to the receipt … of papers seeking review of the transfer order and [make] immediate communication to the District Court Clerk of a request to delay transfer until consideration of such papers can be

completed." *Id.* at 935; *see also Ukiah*, 981 F.2d at 549 n.7 (The D.C. Circuit "issued a per curiam order staying transfer of the record to the Ninth Circuit pending appeal" so the court "retained jurisdiction to review the transfer order on petition for mandamus.").

The familiar four-factor test for a stay pending appeal is comfortably satisfied here. A stay turns on the movant's likelihood of success, the risk of irreparable injury absent a stay, the balance of harms, and the public interest. *Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 56 (D.D.C. 2009). The last two factors "merge" where, as here, "the Government is a party." *Am. Hist. Ass'n v. Trump*, 835 F. Supp. 3d 1, 10 (D.D.C. 2026). "If the arguments for one factor are particularly strong," a stay is proper "even if the arguments in other areas are rather weak." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).

Do No Harm is likely to succeed on the merits of its claim. Do No Harm "need not establish 'an absolute certainty of success'; rather, '[i]t will ordinarily be enough that the [movant] has raised serious legal questions.'" *Al Maqaleh*, 620 F. Supp. 2d at 56; *see also Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986)). That standard can be met by showing the case "present[s] issues as to which there is 'a substantial ground for difference of opinion.'" *Al Maqaleh*, 620 F. Supp. 2d at 56. Do No Harm meets that standard many times over considering the split of authority. *See supra* 3-5. In any event, the D.C. Circuit is likely to agree with Do No Harm that permitting intervenors to transfer under §1404(a) is improper because such a rule for venue would create a conflict with established doctrines for personal jurisdiction to sovereign immunity under which a party that voluntarily intervenes is held to have waived objections by submitting itself to the court. *See supra* 3; *see also Consumers Union*, 590 F.2d at 1222 n.65. "Hence, the first factor squarely favors" Do No Harm. *Al Maqaleh*, 620 F. Supp. 2d at 56.

Do No Harm will suffer irreparable harm absent a stay. If the case file is transferred, Do No Harm does not merely risk an inconvenient forum; it loses the right to appellate review of the transfer

altogether. Accordingly, because "an appeal from a transfer order filed after the physical transfer of the record would be futile, the preferred approach is to delay physical transfer … long enough … to allow the aggrieved party to file a mandamus petition." *Chrysler Credit*, 928 F.2d at 1517. Otherwise, a transfer "carried out rapidly" may become "immune" from appellate review. *In re Briscoe*, 976 F.2d at 1426. No later appeal can undo that. That is a classic risk of irreparable injury, and the D.C. Circuit has accordingly ordered stays of transfer to "retain jurisdiction to review the transfer order on petition for mandamus." *Ukiah Adventist Hosp.*, 981 F.2d at 549 n.7.

The balance of harms and the public interest point the same way. A stay measured in days will not "result in substantial harm" to POL; status-quo relief pending appeal is appropriate precisely "when little if any harm will befall other interested persons or the public." *Washington Metro. Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 843-44 (D.C. Cir. 1977). And the public interest favors "preserving orderly procedures" over a race to transmit the file that would defeat review altogether. *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985); *see also D.C. v. Trump*, 810 F. Supp. 3d 19, 29 (D.D.C. 2025) ("a stay is needed to permit orderly proceedings on appeal").

To facilitate appellate review, the Court should certify its order for interlocutory appeal under 28 U.S.C. §1292(b). Certification is proper where "(1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance the litigation." *APCC Servs. v. Sprint Commc'ns*, 297 F. Supp. 2d 90, 95 (D.D.C. 2003). Each element is satisfied here.

***First***, a "controlling question of law is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources." *Id.* at 95-96. Such a question "need not necessarily terminate an action in order to be 'controlling,'" but may instead "involve a procedural determination that may significantly impact the action." *Id.* at 96. Whether a voluntary intervenor may move to transfer venue under §1404(a) is

precisely that kind of threshold determination: its resolution dictates whether this case proceeds in this Court or in the District of Hawaii. And "reversal" by the D.C. Circuit would keep the case in this Court rather than the District of Hawaii—plainly affecting "the course of litigation" and conserving the "resources" the parties and courts would otherwise expend. *Id.* at 95-96.

***Second***, "'[a] substantial ground for difference of opinion is often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits.'" *Molock v. Whole Foods Mkt. Grp, Inc.*, 317 F. Supp. 3d 1, 5 (D.D.C. 2018); *see also City Stores Co. v. Lerner Shops*, 410 F.2d 1010, 1011-12 (D.C. Cir. 1969). Both conditions are present. There is no controlling D.C. Circuit decision on whether a voluntary intervenor may invoke §1404(a) to transfer venue for convenience. *Cf. Intrepid Potash*, 669 F. Supp. 2d at 91-93; *but see Consumers Union*, 590 F.2d at 1222 n.65. And the courts that have addressed the question are split nationwide. *See supra* 3-5.

***Third***, an immediate appeal would materially advance the ultimate termination of the litigation. Do No Harm "need not show that a reversal on appeal would actually end the litigation"; it is enough that "reversal would hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense." *Molock*, 317 F. Supp. 3d at 6. Certifying the transfer question now—while the requested stay preserves the D.C. Circuit's power to decide it—settles the forum before the parties and courts invest in litigating the merits. The alternative—allowing the case to proceed in the District of Hawaii while the propriety of that forum remains unsettled—is the very waste §1292(b) exists to prevent. And deferring review offers no adequate substitute: once the file is transferred, the question becomes, "as a practical matter, … effectively unreviewable," so it is "far better for all concerned … to have th[e] matte[r] resolved now, as opposed to sometime in the distant future." *APCC*, 297 F. Supp. 2d at 100.

Should the Court decline to certify under §1292(b), Do No Harm will have no recourse other than a writ of mandamus, the recognized mechanism for reviewing a transfer order. *Ukiah*, 981 F.2d

at 548; *Hill*, 195 F.3d at 676. And the D.C. Circuit is known to grant mandamus to vacate an improper §1404(a) transfer. *In re Scott*, 709 F.2d 717, 719-20, 721-22 (D.C. Cir. 1983); *In re Briscoe*, 976 F.2d at 1429; *Starnes*, 512 F.2d at 924. Other circuits follow the same path, granting mandamus to correct erroneous §1404(a) transfer rulings. *See, e.g.*, *In re Clarke*, 94 F.4th 502, 507 (5th Cir. 2024); *In re Chamber of Com.*, 105 F.4th 297, 300 (5th Cir. 2024); *In re Volkswagen of Am.*, 545 F.3d 304, 307 (5th Cir. 2008) (en banc); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2008); *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 951-52 (9th Cir. 1968); *Commercial Lighting Prods. v. U.S. Dist. Court*, 537 F.2d 1078, 1079-80 (9th Cir. 1976); *Sunbelt Corp. v. Noble, Denton & Assocs.*, 5 F.3d 28, 30 (3d Cir. 1993).

Do No Harm therefore respectfully requests that, if the Court grants transfer, it stay the order and withhold transmission of the case file to the District of Hawaii for 30 days to allow Do No Harm to seek appellate review. That period of time is reasonable. Indeed, the en banc D.C. Circuit has suggested "five-day" or "10-day" periods may be insufficient, and at least "20 days" would be proper. *Starnes*, 512 F.2d at 935. Other courts and local rules use similar or even longer periods. *See, e.g.*, *Semro v. Halstead Enters.*, 619 F. Supp. 682, 683 (N.D. Ill. 1985) (clerk's "general policy of holding transfer papers for at least 30 days"); *Database Am., Inc. v. Bellsouth Advert. & Pub. Corp.*, 825 F. Supp. 1216, 1222 (D.N.J. 1993) (citing *Semro*'s 30-day policy); *In re Chamber of Com.*, 105 F.4th at 302 n.17 (cataloging district rules that stay transmittal for 21 days, *e.g.*, E.D. Tex. Local R. CV-83(b) (clerk transmits "no sooner than the twenty-first day"); S.D. Tex. Gen. Order 2024-2 (out-of-circuit transfers "stayed for 21 days")); *Plocek v. U.S. Lines Co.*, 43 F.R.D. 36, 37 (E.D. Pa. 1967) (explaining E.D. Pa. Local Rule 17-A requires an automatic stay of transfer for 20 days to allow "application to the Court of Appeals for mandamus and a stay") (cleaned up); *see also In re United States*, 273 F.3d 380, 383-84 & n.5 (3d Cir. 2001) (endorsing the practice of "automatically granting a stay of a transfer for a specified period of time" and noting that the Eastern District of Pennsylvania, by local rule, stays a transfer order "for twenty days").

## CONCLUSION

POL waived its objections to inconvenient venue by voluntarily intervening. If the Court reaches the merits, POL's motion fails because this action could not have been brought in Hawaii, and the private- and public-interest factors do not favor transfer. The Court should deny the motion.

Dated: October 8, 2026

Respectfully submitted,

*/s/ Cameron T. Norris*
Thomas R. McCarthy
(D.C. Bar #489651)
Cameron T. Norris
*Lead Counsel*
Frank H. Chang
(D.C. Bar #1686578)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
frank@consovoymccarthy.com

*Attorneys for Plaintiff Do No Harm*